UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

SARAH BISWABIC,

        Plaintiff,

        v.                                    Case No. 21-C-536

KILOLO KIJAKAZI,
Acting Commissioner of Social Security

        Defendant.

## DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION

Plaintiff Sarah Biswabic filed this action for judicial review of a decision by the Commissioner of Social Security denying her application for supplemental security income under Title XVI of the Social Security Act. Plaintiff asserts that the decision of the administrative law judge (ALJ) is flawed and requires remand for a number of reasons. For the reasons that follow, the Commissioner's decision will be affirmed.

## BACKGROUND

Plaintiff filed an application for supplemental security income on August 30, 2018, alleging disability beginning on June 15, 1985. R. 693. She listed fibromyalgia, diabetes, severe sweating, anxiety, stress, depression, right shoulder pain, an internal hemorrhoid, and obesity as the conditions limiting her ability to work. R. 716. After her application was denied initially and on reconsideration, Plaintiff requested an administrative hearing. On February 21, 2020, ALJ Arman Rouf held a hearing at which Plaintiff, who was represented by counsel, and a vocational expert (VE) testified. R. 603–31.

At the time of the hearing, Plaintiff was 44 years old and lived in a house in Green Bay, Wisconsin, with her husband and eighteen-year-old son. R. 607. Plaintiff testified that she completed high school. She indicated that she last worked as a substitute teacher for Green Bay Area Public Schools. R. 608. Before that she worked around 20 hours a week at a telemarketing company. *Id.* Plaintiff testified that she experienced pain throughout her body but that the worst pain was located in her back and legs. She stated that she had been using medication and going to physical therapy to help with the pain, although neither was doing much to help. R. 609–10. Plaintiff also reported suffering from severe fatigue due to her fibromyalgia and an inability to sleep through the night due to her severe pain. R. 610–11. She testified that she has social anxiety that causes her to sweat excessively when she is around groups of people and that she is nervous to interact with others, including her own family. R. 611. She indicated that she had been seeing a therapist and taking medication to ease her symptoms. R. 612. Plaintiff noted that she had difficulties with short-term memory, concentration, and decision-making. R. 614.

As for a typical day, Plaintiff testified that she usually wakes up around 7:00 a.m., uses the restroom, and then, depending on how much pain she is in, returns to bed or watches television. R. 615. She stated that, around noon, she takes her medicine and then sleeps for roughly an hour before trying to "get up and do something." *Id.* She reported that she typically did not accomplish much. *Id.* She further stated that her husband typically has to bring her meals in bed and that she typically stays home and goes to bed. *Id.* Plaintiff testified that she has difficulties taking care of herself, noting that she has trouble bathing and dressing herself, and cannot prepare meals. R. 616. She stated that she tries to vacuum and fold laundry but that she can only do it for so long before her back begins to hurt. *Id.* She noted that she and her family will occasionally go out to eat or visit her family. R. 617.

2

Case 2:21-cv-00536-WCG   Filed 08/30/22   Page 2 of 14   Document 23

In a sixteen-page decision dated March 17, 2020, the ALJ concluded that Plaintiff was not disabled. R. 583–98. Following the Agency's sequential evaluation process, the ALJ found that Plaintiff had not engaged in gainful activity since August 21, 2018, the date of her application. R. 585. Next, the ALJ determined that Plaintiff had the following severe impairments: fibromyalgia, hyperhidrosis, left shoulder impingement, right shoulder disorder, right knee osteoarthritis, obesity, diabetes mellitus, neuropathy, major depressive disorder, generalized anxiety disorder, and social anxiety disorder. *Id.* The ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 586.

After reviewing the record, the ALJ determined that Plaintiff had the residual functional capacity (RFC) to perform light work as defined in 20 C.F.R. § 416.967(b) but with the following limitations:

> the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; can occasionally reach overhead with the bilateral upper extremities; can occasionally push or pull with the right lower extremity; and, must avoid extreme heat, unprotected heights and dangerous machinery. The claimant can perform simple and routine tasks, can maintain attention and concentration for two-hour segments, can make simple work-related decisions, can tolerate occasional changes in a routine work setting, and, can frequently interact with supervisors and coworkers and occasionally interact with the public.

R. 589. The ALJ found that Plaintiff had no past relevant work. R. 596. Considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was capable of performing jobs existing in significant numbers in the national economy, including housekeeping cleaner, assembler, and hand packager. R. 597. Based on these findings, the ALJ concluded that Plaintiff was not disabled from August 21, 2018, through the date of the decision. *Id.* The Appeals

Council denied Plaintiff's request for review of the ALJ's decision, making that decision the final decision of the Commissioner. R. 1.

## LEGAL STANDARD

The burden of proof in social security disability cases is on the claimant. 20 C.F.R. § 404.1512(a) ("In general, you have to prove to us that you are blind or disabled."). While a limited burden of demonstrating that other jobs exist in significant numbers in the national economy that the claimant can perform shifts to the Social Security Administration (SSA) at the fifth step in the sequential process, the overall burden remains with the claimant. 20 C.F.R. § 404.1512(f). This only makes sense, given the fact that the vast majority of people under retirement age are capable of performing the essential functions required for some subset of the myriad of jobs that exist in the national economy. It also makes sense because, for many physical and mental impairments, objective evidence cannot distinguish those that render a person incapable of full-time work from those that make such employment merely more difficult. Finally, placing the burden of proof on the claimant makes sense because many people may be inclined to seek the benefits that come with a finding of disability when better paying and somewhat attractive employment is not readily available.

The determination of whether a claimant has met this burden is entrusted to the Commissioner of Social Security. Judicial review of the decisions of the Commissioner, like judicial review of all administrative agencies, is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). But the "substantial evidence" test is not intended to reverse the

burden of proof. In other words, a finding that the claimant is not disabled can also follow from a lack of convincing evidence.

Nor does the test require that the Commissioner cite conclusive evidence excluding any possibility that the claimant is unable to work. Such evidence, in the vast majority of cases that go to hearing, is seldom, if ever, available. Instead, the substantial evidence test is intended to ensure that the Commissioner's decision has a reasonable evidentiary basis. *Sanders v. Colvin*, 600 F. App'x 469, 470 (7th Cir. 2015) ("The substantial-evidence standard, however, asks whether the administrative decision is rationally supported, not whether it is correct (in the sense that federal judges would have reached the same conclusions on the same record).").

The Supreme Court has reaffirmed that, "[u]nder the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "The phrase 'substantial evidence,'" the Court explained, "is a 'term of art' used throughout administrative law to describe how courts are to review agency factfinding." *Id.* "And whatever the meaning of 'substantial' in other contexts," the Court noted, "the threshold for such evidentiary sufficiency is not high." *Id.* Substantial evidence is "'more than a mere scintilla.'" *Id.* (quoting *Consolidated Edison*, 305 U.S. at 229). It means—and means only—"'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.*

The ALJ must provide a "logical bridge" between the evidence and his or her conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "Although an ALJ need not discuss every piece of evidence in the record, the ALJ may not ignore an entire line of evidence that is contrary to the ruling." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009) (citing *Villano v. Astrue*, 556

5

F.3d 558, 563 (7th Cir. 2009); *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004)). But it is not the job of a reviewing court to "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A. RFC Assessment**

Plaintiff argues that the ALJ's RFC assessment is not supported by substantial evidence. An RFC is an assessment describing the extent to which an individual's impairments may cause physical or mental limitations or restrictions that could affect her ability to work. SSR 96-8p, 1996 WL 374184, at *2. The RFC represents "the maximum a person can do—despite [her] limitations—on a 'regular and continuing basis,' which means roughly eight hours a day for five days a week." *Pepper v. Colvin*, 712 F.3d 351, 362 (7th Cir. 2013) (quoting SSR 96-8p). The ALJ assesses a claimant's RFC "based on all the relevant evidence" in the record, including severe and non-severe impairments as well as medical and non-medical evidence. 20 C.F.R. § 404.1545(a), (e). "The RFC assessment must include a narrative discussion describing how the

6

evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 1996 WL 374184, at *7. The Court's task is to "determine whether substantial evidence supports the ALJ's RFC conclusion." *Pepper*, 712 F.3d at 363. In this case, the ALJ found that Plaintiff has the RFC to perform light work with the following limitations:

> the claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; can never climb ladders, ropes, or scaffolds; can occasionally reach overhead with the bilateral upper extremities; can occasionally push or pull with the right lower extremity; and, must avoid extreme heat, unprotected heights and dangerous machinery. The claimant can perform simple and routine tasks, can maintain attention and concentration for two-hour segments, can make simple work-related decisions, can tolerate occasional changes in a routine work setting, and, can frequently interact with supervisors and coworkers and occasionally interact with the public.

R. 589.

Plaintiff asserts that the ALJ's finding of light work was unsupported by the record and that the ALJ did not adequately explain how he arrived at the RFC. She maintains that the ALJ erred by departing from the findings of consultative psychological examiner Dr. Kelly Schinke in assessing Plaintiff's mental RFC without explanation or supporting rationale. Plaintiff presented for a psychological evaluation with Dr. Schinke on April 1, 2019. R. 1411. In her "statement of work capacity," Dr. Schinke stated:

> Ms. Biswabic is not likely to have difficulty understanding, recalling, and carrying out simple instructions. She was able to recall information and follow directions adequately in this evaluation. Ms. Biswabic may have difficulty responding appropriately to her supervisors and co-workers, as her father described her to be inappropriate with others. She was polite and appropriate today. Ms. Biswabic may have difficulty maintaining concentration and attention. She reported she struggles to focus. She was adequately attentive in this evaluation. Ms. Biswabic may not have adequate psychological resources to deal effectively with work stresses or adapt to changes. She appears to be experiencing symptoms of depression and anxiety that she stated have hindered her work performance in the past. Ms. Biswabic does not appear to require the assistance of others to protect

7

> her financial interests and manage her daily needs, as she is reporting that she is able to pay bills independently.

R. 1414. The ALJ found Dr. Schinke's findings "somewhat persuasive." R. 595. He noted that Dr. Schinke's conclusion that Plaintiff could perform simple instructions is supported by her own examination findings and is consistent with the findings of Plaintiff's treating providers and other evidence of record. The ALJ explained that Dr. Schinke observed that, during her examination of Plaintiff, Plaintiff was able to recall information, follow directions adequately, and attend to the examination appropriately and that other examinations have shown intact memory, average intelligence, an ability to abstract, logical thought, and good concentration and focus. *Id.*

The ALJ found that Dr. Schinke's remaining conclusions were "vague." *Id.* He stated that Dr. Schinke uses the term "may," which is speculative, and does not define the degree to which she believes Plaintiff to be limited in any of the remaining areas. The ALJ indicated that he addressed any limitations in those areas in the RFC findings that Plaintiff can perform simple and routine tasks, maintain attention and concentration for two-hour segments, make simple work-related decisions, tolerate occasional changes in a routine work setting, and frequently interact with supervisors and coworkers and occasionally interact with the public. He explained that Plaintiff's ability to sustain this work is shown by good examination findings as well as the findings of cooperative and pleasant behavior, normal grooming and dress, normal mood and affect, and fair to good insight and judgment. *Id.*

Although Plaintiff asserts that the ALJ's RFC assessment is not supported by substantial evidence because he deviated from the findings of Dr. Schinke, there is no requirement that an ALJ adopt in whole any one opinion from a medical provider in assessing an RFC. *See Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) ("[A]n ALJ must consider the entire record[;] the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions

8

of any of the claimant's physicians." (citation omitted)). It is the responsibility of the ALJ, not a medical expert, to determine a claimant's RFC. 20 C.F.R. § 404.1546(c). In this case the ALJ reasonably explained why he departed from Dr. Schinke's findings in assessing Plaintiff's RFC.

Plaintiff also argues that the ALJ erred when he deviated from the findings of her primary care provider, Dr. Melissa Hidde. Dr. Hidde completed a "Physical Impairment Questionnaire" in June 2019. R. 1416–26. Dr. Hidde opined that Plaintiff could occasionally lift and carry one to ten pounds; never lift or carry more than ten pounds; sit for thirty minutes at a time and up to six hours in an eight-hour workday; stand for fifteen minutes at a time and up to two hours in an eight-hour workday; occasionally reach, handle, finger, and feel; occasionally use her feet for operation of foot controls; occasionally climb ramps/stairs; never climb ladders/ropes/scaffolds, balance, stoop, kneel, crouch, or crawl; and avoid exposure to extreme cold, extreme heat, wetness, humidity, vibration, and unprotected heights. R. 1418–24. She concluded that Plaintiff was not capable of performing substantial services with reasonable regularity in competitive employment. R. 1426.

The ALJ found that Dr. Hidde's opinions were not persuasive. R. 595. He explained that Dr. Hidde's conclusions are not entirely based upon her own objective findings. R. 596. Dr. Hidde acknowledged that her opinions were at least in part based on Plaintiff's "multiple somatic and psychiatric complaints." R. 1453. The ALJ stated that Dr. Hidde's treatment notes show that she allowed Plaintiff to contribute to, and approve, her RFC form, though a fair reading suggests only that she discussed the form with Plaintiff in "great detail" and that Plaintiff "agreed with the information provided." *Id.* He also found that Dr. Hidde's significant exertional, postural, manipulative, and environmental limitations are not supported by her own treatment notes or other evidence of record. The ALJ observed that examinations in the record, including Dr. Hidde's own

9

examinations, showed no distress; dry skin; and normal sensation, strength, tone, gait, reflexes and coordination. He stated that a functional capacity evaluation was consistent with light exertional work. The ALJ also noted that Plaintiff has not required significant treatment for her conditions, including her musculoskeletal complaints and, as Dr. Hidde indicated, Plaintiff's diabetes is generally near goal. He explained that, as Dr. Hidde stated, stress and anxiety contribute to her fibromyalgia pain and that the RFC considers these triggers by limiting her to simple and routine tasks and occasional change in a routine work setting. The ALJ found that Dr. Hidde's indication that Plaintiff would be unable to attend and concentrate due to pain conflicts with Plaintiff's own reports of average attention and concentration and the examinations consistently showing no deficits in these areas. Finally, the ALJ noted that Dr. Hidde's conclusions that Plaintiff would be frequently absent and would be unable to perform substantial services with regularity/participate in meaningful employment are vague, speculative, and without basis in the record, particularly in light of the good physical examinations and lack of more than conservative treatment, save for the May 2017 shoulder surgery. *Id.* Although Plaintiff asserts that the ALJ failed to give an "accurate assessment of this evidence," Pl.'s Br. at 23, Dkt. No. 15, she does not explain how the ALJ erred in assessing Dr. Hidde's opinion. As with Dr. Schinke, the ALJ thoroughly explained why he deviated from the opinions of Dr. Hidde in forming the RFC. The Court finds no error on this basis.

Plaintiff further asserts that the ALJ erred in his assessment of the functional capacity examination (FCE) completed by Occupational Therapist Sara Wesoloski in December 2018. R. 1402–10. Wesoloski concluded that Plaintiff showed limited ability to walk and stand; would have to alternate between standing, walking, and other tasks; and would be able to tolerate the light level of work. R. 1402. She indicated that this represented the minimal overall level of work

10

Plaintiff could perform and that the maximum overall level of work could not be determined due to Plaintiff's self-limiting and inconsistent behavior. R. 1403–04.

The ALJ found that the FCE had "some persuasive value." R. 594. He explained that the conclusion that Plaintiff can perform a range of light work is in keeping with the benign physical examinations and absence of aggressive interventions. The ALJ nevertheless found that Wesoloski's other more restrictive findings are not consistent with the evidence in the record. He also noted that Wesoloski's examination was compromised by Plaintiff's self-limiting and inconsistent behaviors, which led Wesoloski to conclude that light level work was possibly the minimum, rather than the maximum, level of work Plaintiff could perform. *Id.* Plaintiff argues that it was "well documented" in the FCE that she self-limited and stopped tasks due to pain. Pl.'s Br. at 25. But Wesoloski explicitly found that, while pain could be a possible explanation for self-limiting behavior, the degree to which Plaintiff self-limited exceeded "normal limits." R. 1404. Wesoloski concluded that "psychosocial and/or motivational factors are affecting test results" and that there is "evidence of low effort and inconsistent behavior." R. 1402, 1404. Plaintiff does not explain how the ALJ erred in relying on Wesoloski's observations in reaching his conclusions.

Plaintiff also argues that the ALJ erred by citing minimal evidence to support the RFC assessment. A fair reading of the ALJ's decision, however, reveals that he fully considered the evidence in the record when assessing Plaintiff's RFC. Plaintiff challenges the ALJ's summary of the evidence, but the Seventh Circuit has held that such summaries are appropriate. *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("[I]f she is complaining that the ALJ summarized the medical evidence, that is unavailing because summaries are appropriate . . . . And if she is complaining that the ALJ's summary was a partial summary of select evidence, that is equally unavailing because all summaries must be partial and selective." (internal citations omitted)).

11

Indeed, the ALJ thoroughly summarized and assessed Plaintiff's testimony, function reports, activities of daily living, medical records, opinion evidence, and third-party function reports. R. 590–96. Although Plaintiff asserts that the ALJ did not cite evidence showing that she was assessed with confusion at two appointments, two adult function reports, recent medical treatment forms, a medication list, and a third-party function report, or the hearing testimony, it is clear the ALJ did not ignore this evidence. In addition, Plaintiff does not explain how this evidence required the ALJ to include more restrictions in the RFC assessment.

Plaintiff contends that the ALJ erred in relying on her conservative treatment for her left shoulder and right knee without indicating what other treatment was available and appropriate. "An ALJ is entitled to consider the course of a claimant's treatment." *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (citing 20 C.F.R. § 404.1529(c)(3)(v)). In this case, the ALJ noted that no more than conservative treatment was recommended by her providers to treat her impairments. The ALJ did not err in considering that Plaintiff received conservative treatment.

Plaintiff asserts that the ALJ failed to support his conclusion that she could maintain attention and concentration for two-hour segments and could occasionally interact with the public. But the ALJ adequately explained that these findings were supported by medical records that indicated Plaintiff had an intact memory, average intelligence, an ability to abstract, logical thought and good concentration and focus, cooperative and pleasant behavior, normal grooming and dress, normal mood and affect, and fair to good insight and judgment. R. 595.

After reviewing the record, the ALJ ultimately concluded that Plaintiff had the RFC to perform light work with certain limitations. R. 589. Although Plaintiff may have preferred that the ALJ reach a different conclusion, a reviewing court may not substitute its judgment for that of the agency it is tasked to review. Substantial evidence supports the ALJ's RFC finding.

**B. Constitutional Claim**

Plaintiff asserts that the adjudication of her claim was constitutionally defective because Section 702 of the Social Security Act, 42 U.S.C. § 902, which limits the President's authority to remove the Commissioner without good cause, violates the separation of powers. Because the removal clause is unconstitutional, Plaintiff claims, former Commissioner Andrew Saul lacked the authority to delegate adjudication of this matter to the ALJ and the Appeals Council. The Commissioner concedes that § 902(a)(3) violates the separation of powers to the extent that it is construed as limiting the President's authority to remove the Commissioner without cause. Dkt. No. 25 at 7 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021)). The Commissioner asserts, however, that Plaintiff is not entitled to relief absent a showing of harm caused by the unconstitutional statutory removal restriction.

The Court agrees. The Supreme Court has held that an unconstitutional removal provision does not automatically void all agency action. *See Collins v. Yellen*, 141 S. Ct. 1761, 1788 n.3 (2021). Instead, the unconstitutional provision must cause harm. *Id.* at 1789. To succeed on her claim, Plaintiff must demonstrate a "causal link between the unconstitutional removal clause" and her alleged injuries, namely the denial of her benefits. *Id.* The Court suggested that harm could be traced to the removal clause where "1) the commissioner played a role in the agency action and 2) the president would have removed the commissioner to prevent the action but-for the removal provision." *Roth v. Kijakazi*, No. 20-C-1077, 2021 WL 6062062, at *5 (W.D. Wis. Dec. 22, 2021) (citing *Collins*, 141 S. Ct. at 1789). Plaintiff has not demonstrated that the Commissioner played any role in deciding her claim or that the President would have intervened to stop the Commissioner from acting but-for the removal provision. *See Collins*, 141 S. Ct. at 1802 (Kagan,

13

J., concurring) ("But given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone . . . . When an agency decision would not capture a President's attention, his removal authority could not make a difference."). Because Plaintiff has not shown a causal connection between the unconstitutional removal clause and the denial of her claim, remand is not warranted on this basis. *See also Robinson v. Kijakazi*, No. 21-C-238, 2022 WL 443923 (E.D. Wis. Feb. 14, 2022).

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**. The Clerk is directed to enter judgment in favor of the Commissioner.

**SO ORDERED** at Green Bay, Wisconsin this 30th day of August, 2022.

s/ William C. Griesbach<br>
William C. Griesbach<br>
United States District Judge